Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la cual se une el Juez Presidente Señor Hernández Denton.
Hoy, una mayoría de este Tribunal reafirma las expre-siones que vertiera en Pantoja Oquendo v. Mun. de San Juan, 182 D.P.R. 101 (2011), y resuelve que, en casos de alto interés público, el Tribunal de Apelaciones carece de discreción para otorgar un término a la parte recurrida para que se exprese con relación a una moción en auxilio de jurisdicción presentada en su contra, sin antes evaluar si tal solicitud merece un remedio inmediato o si carece de méritos. Por entender que nada en nuestro ordenamiento procesal prohíbe el proceder del foro apelativo intermedio y que la opinión mayoritaria se basa en la premisa errónea de que el Tribunal de Apelaciones actuó sin evaluar los méritos de la controversia ante sí, disiento.
I
El 17 de mayo de 2011, un grupo de padres y maestros de estudiantes de la Escuela Superior Luis Muñoz Iglesias (en adelante los recurridos), del municipio de Cidra, reci-bieron urna comunicación del entonces Secretario de Edu-cación, Jesús Rivera Sánchez, mediante la cual se les in-formó que, conforme al procedimiento establecido en la Carta Circular Número 4-2009-2010, cerrarían su escuela desde el 31 de mayo de 2011 en adelante y el funciona-miento administrativo y docente de dicho plantel escolar se consolidaría con el de la Escuela Superior Ana J. Candelas, de mismo municipio.
En desacuerdo con esta acción administrativa, el 1 de junio de 2011, los recurridos instaron un pleito de inter-dicto preliminar ante el Tribunal de Primera Instancia. So- *396 licitaron que se paralizara la orden de cierre y posterior consolidación de su plantel escolar. Alegaron que el Secre-tario de Educación violó sus derechos constitucionales a un debido proceso de ley y a la igual protección de las leyes al ordenar el cierre de la Escuela Luis Muñoz Iglesias sin cumplir con el procedimiento establecido en la Carta Circular Número 4-2009-2010, particularmente con su exigen-cia de notificar al Consejo Escolar la evaluación que se realice de la escuela previo a ordenar su cierre, para que este organismo se pueda expresar sobre la recomendación de cierre y pueda remitir sus comentarios al Secretario de Educación. Por su parte, el Gobierno respondió que el men-cionado requisito era una mera directriz general y que la propia Carta Circular establecía que en nada se alteraba la facultad del Secretario de Educación para cerrar escuelas aunque no hubiese recibido recomendaciones al respecto.
Tras varios trámites procesales, los cuales incluyeron una vista de injunction preliminar, el Tribunal de Primera Instancia dio la razón a los recurridos, por lo cual expidió un injunction provisional y ordenó al Departamento de Educación que dejara sin efecto el cierre de la Escuela Superior Luis Muñoz Iglesias. El foro primario concluyó que el Estado no cumplió con el proceso establecido en la Carta Circular, por lo que violó el debido proceso de ley de los recurridos. Además, concluyó que el cierre ilegal de su es-cuela representaría un daño irreparable.
Inconforme, el 15 de julio de 2011, el Gobierno de Puerto Rico acudió oportunamente al Tribunal de Apelaciones me-diante recurso de certiorari, el cual acompañó con una mo-ción en auxilio de jurisdicción en la que solicitó que se de-jara sin efecto el injunction provisional otorgado por el Tribunal de Primera Instancia mientras se dilucidaba el recurso de certiorari. El mismo día, el tribunal intermedio otorgó un término de siete (7) días a la parte recurrida para que expresara su posición sobre la moción en auxilio de jurisdicción, así como respecto al certiorari.
*397 Aún inconforme, el 21 de julio de 2011, el Estado pre-sentó ante nuestra consideración una petición de certio-rari, junto con una moción en auxilio de jurisdicción, en la cual solicitó que dejáramos sin efecto inmediatamente el injunction emitido. Alegó que, según establecido en Pantoja Oquendo v. Mun. de San Juan, supra, el Tribunal de Apelaciones erró al otorgar un término de siete (7) días a la parte recurrida para que ésta se expresara, en lugar de resolver inmediatamente la moción en auxilio de jurisdicción.
El 22 de julio de 2011, este Tribunal declaró “ha lugar” la moción en auxilio de jurisdicción, paralizando de esta forma los efectos del injunction, y ordenó a la parte recu-rrida mostrar causa por la cual no se debía revocar la Re-solución del Tribunal de Apelaciones. Ya desde entonces mostré mi insatisfacción con el proceder de esta Curia, por lo que hice constar en la Resolución emitida por este Tribunal que, por razones similares a las expresadas en mi opinión disidente en Pantoja Oquendo v. Mun. de San Juan, supra, consideraba inapropiada nuestra interven-ción en esta etapa de los procedimientos. Mi postura no ha cambiado.
II
Como bien señala la mayoría en su exposición sobre la naturaleza de la moción en auxilio de jurisdicción, este re-curso es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los reme-dios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia. Pantoja Oquendo v. Mun. de San Juan, supra; San Gerónimo Caribe Project v. A.R.Pe., 174 D.RR. 640, 654 (2008); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 678 (1997). Se trata, pues, de un remedio cuya concesión recae en la sana discreción de los tribunales y que sólo está disponible ex- *398 cepcionalmente y para casos en los que existan situaciones de verdadera emergencia. Marrero v. Dolz, 142 D.P.R. 72, 73 (1996).
Sobre la concesión de órdenes en auxilio de jurisdicción por parte de los tribunales apelativos, la Regla 79 del Re-glamento del Tribunal de Apelaciones dispone:
(A) Para hacer efectiva su jurisdicción en cualquier asunto pendiente ante sí, el Tribunal de Apelaciones podrá expedir cualquier orden provisional, la cual será obligatoria para las partes en la acción, sus oficiales, agentes, empleados(as) y abogados(as), y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. Dichas órde-nes se regirán por las disposiciones pertinentes del Código de Enjuiciamiento Civil, las Reglas de Procedimiento Civil, las Reglas de Procedimiento Criminal y, en lo que no fuere incompatible con aquéllas, se regirán también por estas reglas. 4 L.P.R.A. Ap. XXII-B.
Asimismo, la Regla 28 del Reglamento del Tribunal Supremo de Puerto Rico recoge la facultad de este Foro para emitir este tipo de órdenes:
(a) El Tribunal [Supremo] podrá expedir una orden provisional en auxilio de jurisdicción cuando sea necesario hacer efec-tiva su jurisdicción en un asunto pendiente ante su consideración.
A los fines de esta regla, se entenderá que el Tribunal aten-derá, sin sujeción al trámite ordinario, cualquier asunto rela-cionado con el recurso presentado o pendiente para evitar al-guna consecuencia adversa que afecte su jurisdicción o que pueda causar daño sustancial a una parte mientras resuelve el recurso. In re Reglamento Tribunal Supremo, 183 D.P.R. 386, 463 (2011).
Como se puede apreciar de la exposición de los hechos de este caso, así como del derecho aplicable a la controver-sia que plantea, nada en nuestro ordenamiento jurídico conduce al resultado al que llega hoy una mayoría de esta Curia. Veamos.
*399 III
Al igual que en Pantoja Oquendo, la única controversia que pende ante nuestra consideración es si constituyó un abuso de discreción del Tribunal de Apelaciones conceder un término breve a los recurridos para que se expresaran acerca de la moción en auxilio de jurisdicción y el recurso de certiorari presentados en su contra. Sólo de eso trata este caso; de nada más. Al resolver erróneamente que sí abusó de su discreción, este Tribunal opta una vez más por sustituir su criterio por el del tribunal que evaluó la prueba presentada en corte, sin permitir siquiera que el Tribunal de Apelaciones emitiera una adjudicación en los méritos.
En Pantoja Oquendo, una mayoría de este Tribunal dejó sin efecto un interdicto preliminar expedido por el Tribunal de Primera Instancia para que el Municipio de San Juan desistiera de impedirles a las allí recurridas, partida-rias del Movimiento Amplio de Mujeres de Puerto Rico, pintar un mural como manifestación en contra de la vio-lencia machista en lo que entendió era un foro público tra-dicional o por designación, tras concluir que el Tribunal de Apelaciones había abusado de su discreción al otorgar, el mismo día en que se presentaron los recursos, un término de diez (10) días a la parte recurrida para que se expresara sobre las mociones presentadas en su contra. Según este Tribunal, el foro intermedio erró en aquella ocasión “al no atender con premura y celeridad la moción en auxilio de jurisdicción que se le presentara”, id., pág. 114, por lo su acción creó una especie de “vacío jurídico” y un “panorama de incertidumbre” que perjudicó, irónicamente, al Movi-miento Amplio de Mujeres, la propia parte a cuyo favor se había expedido el interdicto preliminar. íd., págs. 114-115. En otras palabras, para impedir la supuesta “incertidum-bre” relacionada con el ejercicio de un derecho constitucio-nal que el Tribunal de Primera Instancia acababa de vali- *400 dar mediante la concesión del interdicto, esta Curia decidió terminar esa incertidumbre mediante la revocación del dic-tamen que validaba dicho ejercicio y adjudicando en contra de la parte alegadamente perjudicada por la misma, sin siquiera dejar que se expresara.
Ya que la controversia procesal que nos ocupó en aquel caso era prácticamente idéntica a la del caso de autos, me-rece la pena repetir las expresiones que al respecto emitié-ramos en nuestra opinión disidente:
Considero innecesaria la intervención nuestra en esta etapa de los procedimientos. Adviértase que el foro de instancia ex-pidió interdicto preliminar como medida cautelar para prote-ger un reclamo de libertad de expresión. Lo razonable en estos casos, donde se solicita que en auxilio de jurisdicción se deje sin efecto una orden de interdicto, es actuar precisamente como actuó el foro apelativo intermedio, brindándole una opor-tunidad a la parte que reclama que se le ha conculcado su derecho a la libertad de expresión y que ha recibido protección de parte del foro de instancia para expresarse en torno al re-clamo de la otra parte. El foro apelativo fue en extremo dili-gente en este caso. El mismo día en que se presentó la moción en auxilio de jurisdicción y el escrito de apelación, acortó los términos y concedió 10 días a las demandantes para que se expresaran. Concluir, como hace el Tribunal, que el Tribunal de Apelaciones abusó de su discreción al no atender con celeri-dad la moción en auxilio de jurisdicción presentada, sorprende y consterna, pues no refleja la realidad. Por otro lado, debernos preguntarnos: ¿En dónde reside el abuso de discreción si la moción se atendió el mismo día que se presentó y se acortaron los términos? ¿En qué consiste el grave daño sufrido por los demandados que exigiría paralizar los efectos del interdicto preliminar expedido sin escuchar a la parte beneficiada por éste? ¿Qué peligra? El Tribunal, a mi juicio, no ofrece una res-puesta satisfactoria. (Enfasis suplido y en el original). Pantoja Oquendo v. Mun. de San Juan, supra, págs. 122 — 123.
En el caso ante nuestra consideración, la concesión del injunction expedido estuvo predicada en la violación de otro derecho constitucional: el derecho a un debido proceso de ley; por lo tanto, las precitadas expresiones son igual-mente aplicables. Más impactante aún resulta que el tér- *401 mino otorgado a la parte recurrida en este caso es incluso más corto que el ofrecido en Pantoja Oquendo. Mientras que el tribunal apelativo en Pantoja Oquendo concedió diez (10) días a la parte recurrida, en este caso lo limitó a siete (7). Aun así, este Tribunal resuelve que dicho tribunal abusó de su discreción. Difiero del criterio mayoritario.
“¿No sería mejor escuchar a ambas partes? ¿No está este Tribunal interviniendo con las determinaciones dis-crecionales del foro de apelación sobre cómo manejar los asuntos relacionados a la tramitación de los casos ante su consideración? No podemos reclamar deferencia para con las decisiones del Tribunal de Apelaciones en unos casos y en otros no”. Pantoja Oquendo v. Mun. de San Juan, supra, pág. 123.
Este Tribunal establece expresamente hoy que, en casos de alto interés público, el Tribunal de Apelaciones no puede conceder términos a las partes para que se expresen en cuanto a una moción en auxilio de jurisdicción sin antes evaluar si la solicitud es meritoria de su faz. Esta norma es problemática por diversas razones.
En primer lugar, como ya discutimos, no existe funda-mento jurídico en nuestro ordenamiento procesal que pro-híba tal conducta por parte del Tribunal de Apelaciones. Imponer esta restricción implica lacerar la sana discreción que poseen los foros apelativos para tramitar los casos ante su consideración.
En segundo lugar, parece crear una distinción injustifi-cada entre el Tribunal de Apelaciones y este Foro, pues el Tribunal Supremo de Puerto Rico incurre cotidianamente en la misma práctica por la que hoy reprende al foro intermedio. Constantemente otorgamos términos a las par-tes recurridas para que se expresen sobre las mociones en auxilio de jurisdicción presentadas en su contra previo a tomar una determinación al respecto. De hecho, en no po-cas ocasiones, la comparecencia de la parte recurrida trae a colación defensas relevantes o planteamientos jurisdic- *402 dónales no esbozados por la petidonaria en su petidón de auxilio, por lo que resultan de gran valor para la correcta adjudicación en los méritos, tanto de la petición de auxilio como del recurso al que acompaña.
La norma que hoy adopta la mayoría podría resultar en que, ante cualquier moción en auxilio de jurisdicción bien redactada en la que se plantee la existencia de un alto interés público, incluso aunque se hayan omitido elemen-tos importantes que inclinarían la decisión a favor de la parte ausente, el Tribunal de Apelaciones vendría obligado a declararla “ha lugar” inmediatamente. Esto, pues ya le consta que al otorgar un término de apenas siete (7) días a la parte recurrida, el mismo día en que se presentó la mo-ción en auxilio de jurisdicción en su contra, constituiría un abuso de discreción de su parte. El otro resultado posible sería que el foro apelativo optase por denegar de plano lo que parecería una moción en auxilio de jurisdicción meri-toria por que, ante la imposibilidad de otorgar un término razonable a la parte recurrida para que exprese sus argu-mentos, prefiera mantener el statu quo que adjudicar en los méritos una moción sin el beneficio de la comparecencia de la parte que se perjudicaría por su decisión. De cual-quier forma, la norma pautada fomenta precisamente aquello que intenta evitar: que el juzgador apelativo se torne en un objeto autómata.
En tercer lugar, quizá el problema mayor que subyace la nueva norma, y que sin duda alguna sucedió en esta oca-sión, es que se parte de la premisa equivocada de que el Tribunal de Apelaciones otorga términos a las partes sin evaluar primero las mociones presentadas ante sí; en pa-labras de este Tribunal, “sin antes evaluar si la solicitud es meritoria de su faz”. Opinión mayoritaria, pág. 374.
En este caso, no hay fundamento para llegar a esta de-terminación ni para concluir que el Tribunal de Apelacio-nes “fomentó un panorama de incertidumbre jurídica” con su proceder. ¿Qué incertidumbre se crea con dejar expre- *403 sarse a una otra parte sobre una moción presentada en su contra antes de tomar una determinación judicial que po-dría perjudicarle? Mientras exista un dictamen del Tribunal de Primera Instancia que no haya sido revertido por un foro apelativo, las partes deberán regirse por él y no tiene sentido que se catalogue como “panorama de incertidum-bre” cualquier tiempo que transcurra entre la determina-ción que le afectó y la respuesta de un tribunal a una mo-ción presentada para que dicho dictamen se revierta, siempre que el foro apelativo no haya actuado de manera arbitraria o claramente abusiva. Independientemente de cuán largo deba ser ese término para tornarse arbitrario o claramente abusivo, ciertamente el término de siete (7) días otorgado a los recurridos en este caso, el mismo día en que se presentó la moción de auxilio de jurisdicción, no sa-tisface ese criterio.
La mayoría niega que su determinación implique que el Tribunal de Apelaciones deba “conceder inmediatamente, cual objeto autómata, cualquier remedio solicitado me-diante moción en auxilio de jurisdicción” y sostiene que éste debe “utilizar su discreción responsablemente para analizar si el remedio procede en derecho”. Opinión mayo-ritaria, pág. 384. Reconoce, incluso, que “si el tribunal con-sidera meritorio o conveniente escuchar a la otra parte antes e adjudicar la moción, puede conceder un término corto —lo más limitado posible— antes de resolver”. íd. Eso fue precisamente lo que sucedió en este caso. El Tribunal de Apelaciones utilizó responsablemente su criterio y, ampa-rándose en la sana discreción que posee para tramitar los casos ante su consideración, optó por otorgar rápidamente un término corto a la parte recurrida para que le pusiera en mejor posición para evaluar las peticiones. Difícilmente podremos encontrar mejor ejemplo de diligencia y uso ade-cuado de la discreción judicial.
De ahora en adelante, parece ser que el foro apelativo estará obligado a justificar y detallar las razones por las *404 cuales decide otorgar un término a las partes para expre-sar su sentir, pues cualquier silencio al respecto será inter-pretado por este Tribunal como un acto arbitrario que “le resta importancia a la situación presentada y [que] tiene el efecto práctico de denegar sub silentio una moción en la cual se solicita la intervención urgente del Tribunal”. Opi-nión mayoritaria, pág. 385.
Por último, conforme a los planteamientos esbozados en esta opinión, no procede evaluar los méritos de los demás planteamientos que presentaron los peticionarios en su re-curso de certiorari con relación a que no procedía conceder el injunction emitido en su contra hasta tanto el Tribunal de Apelaciones haya tomado una decisión al respecto. Por lo tanto, nos abstenemos de pasar juicio sobre las determi-naciones que sobre ello hiciera una mayoría de este Tribunal.
IV
Por los fundamentos expuestos anteriormente, dejaría sin efecto la orden de paralización emitida por este Tribunal el 22 de julio de 2011, declararía “no ha lugar” el re-curso de certiorari y devolvería el caso al Tribunal de Ape-laciones para que evalúe en sus méritos si erró el Tribunal de Primera Instancia al conceder un injunction para impe-dir el cierre de la Escuela Superior Luis Muñoz Iglesias por violar el derecho constitucional de los recurridos a un debido proceso de ley.